# Illinois Official Reports

## Appellate Court

***Seymour v. Collins*, 2014 IL App (2d) 140100**

| | |
|---|---|
| Appellate Court Caption | TERRY L. SEYMOUR and MONICA SEYMOUR, Plaintiffs-Appellants, v. BRADLEY A. COLLINS, ROCKFORD COUNTRY CLUB, ATS MEDICAL SERVICES, INC., SHAUN P. BRANNEY, and LEO J. VERZANI, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-14-0100 |
| Filed | September 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for defendants in plaintiffs' action for negligence and loss of consortium arising from an automobile accident on the ground that plaintiffs were barred by the doctrine of judicial estoppel from proceeding with their claims, since the plaintiffs had previously filed a chapter 13 bankruptcy petition, and although their chapter 13 plan was modified several times, it was still in effect at the time of the accident, but despite their obligation to report to the bankruptcy court financial changes that might affect their plan, plaintiffs failed to inform the bankruptcy court of their personal injury claims, they took inconsistent positions in the bankruptcy proceedings and the personal injury action, they intended the bankruptcy court to believe the facts alleged in the bankruptcy proceedings, and they benefitted in the bankruptcy proceedings by having their plan proceed to a discharge without their creditors being informed of the personal injury claims and possibly seeking a modification of the plan or filing some other objection. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 11-L-172; the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

William T. Cacciatore and Eileen J. McCabe, both of Cacciatore Law Offices, of Rockford, for appellants.

Jeffrey J. Zucchi, of Clark, Justen, Zucchi & Frost, Ltd., of Rockford, for appellee Bradley A. Collins.

Lori E. McGirk, of Guyer & Enichen, P.C., of Rockford, for appellee Rockford Country Club.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justice Zenoff concurred in the judgment and opinion.
Justice Schostok dissented, with opinion.

## OPINION

¶ 1    Plaintiffs, Terry L. Seymour and Monica Seymour, appeal from an order of the circuit court of Winnebago County applying the doctrine of judicial estoppel and granting summary judgment to defendants, Bradley A. Collins, the Rockford Country Club, ATS Medical Services, Inc., Shaun P. Branney, and Leo J. Verzani. Because the trial court properly applied the doctrine of judicial estoppel, we affirm.

¶ 2                              I. BACKGROUND

¶ 3    On May 20, 2011, plaintiffs filed a 16-count second amended complaint alleging negligence and loss of consortium arising out of a June 3, 2010, traffic accident. The accident involved a vehicle driven by Collins, an employee of the Rockford Country Club, and an ambulance owned by ATS, which was being operated by Branney and Verzani and transporting Terry.

¶ 4    Previously, on April 24, 2008, plaintiffs filed a petition for chapter 13 bankruptcy (11 U.S.C. § 1301 (2006)) in the United States District Court for the Northern District of Illinois. A chapter 13 plan was confirmed on September 19, 2008, and was modified on January 30, 2009, and February 4, 2009.

¶ 5    In May 2009, Terry was injured at work. On February 25, 2010, plaintiffs filed a motion to modify the chapter 13 plan because Terry was unable to work and was receiving workers' compensation payments. The plan was modified on March 19, 2010, lowering plaintiffs' payments.

¶ 6    On June 3, 2010, Terry was injured while working for a new employer. It was that injury that resulted in his being transported in the ambulance when the accident underlying plaintiffs' lawsuit occurred. On June 8, 2010, he filed a workers' compensation claim related to that injury.

¶ 7        On September 18, 2010, and June 20, 2011, plaintiffs filed change-of-address forms with the bankruptcy court. On June 29, 2012, the trustee filed a notice of completion of the payment plan. On July 17, 2012, plaintiffs were granted a discharge in bankruptcy.

¶ 8        Defendants moved for summary judgment in the personal injury case. They contended that plaintiffs should be judicially estopped from proceeding with their claims, because they failed to disclose their personal injury action in the bankruptcy proceeding.

¶ 9        Plaintiffs responded that judicial estoppel did not apply, because: they did not assert under oath in the bankruptcy proceeding that they did not have a pending personal injury case; they did not intentionally fail to disclose the claims; and they did not obtain a benefit in the bankruptcy proceeding by failing to disclose the claims. In support of their response, they submitted their own affidavits, an affidavit of the chapter 13 trustee, Lydia Meyer, and an affidavit of their bankruptcy attorney, Jeffrey Dahlberg.

¶ 10       According to plaintiffs' affidavits, Meyer advised them at a bankruptcy meeting that they were required to report to her and Dahlberg "any lump sum funds received in excess of $2,000." Dahlberg stated in his affidavit that Meyer "advises [d]ebtors at their 341 meeting that they are required to report to their attorney and [her] any lump sum funds received in excess of $2,000."

¶ 11       Meyer stated in her affidavit that all debtors are required to report to her, through their attorney, "any and all cash or monies received during the chapter 13 bankruptcy proceeding other than the income listed on the debtors' Schedule I."

¶ 12       The trial court conducted a hearing on the motion for summary judgment. Plaintiffs presented arguments as to why judicial estoppel did not apply. The court stated that it considered plaintiffs' arguments as well as the affidavits they submitted. The court concluded by stating that it was going to "review the cases that [the parties] cited, [and] the exhibits," and that it had "looked at it all, but [it] wanted to look at it all again."

¶ 13       The trial court issued a written order granting summary judgment. The court stated that it had reviewed the "[m]otion, briefs, affidavits, exhibits, relevant case law, and *** arguments." The court specifically referred to the affidavits of Meyer and Dahlberg. The court found that it was undisputed that plaintiffs never amended their bankruptcy schedules or their statement of financial affairs to disclose the June 3, 2010, work-related injury, the related ambulance accident, or their personal injury case.

¶ 14       Citing *People v. Runge*, 234 Ill. 2d 68 (2009), the trial court set out the five elements of judicial estoppel. The court ruled that plaintiffs had a duty to disclose their pending personal injury lawsuit even if it arose after the plan confirmation and even if they had not yet received a money judgment. The court ruled that the failure to do so "support[ed] a finding of judicial estoppel." Therefore, the court granted summary judgment in favor of all defendants and dismissed the case. Plaintiffs filed a timely appeal.

¶ 15                                II. ANALYSIS

¶ 16       On appeal, the parties initially dispute the proper standard of review. Plaintiffs contend that the standard of review is *de novo*, because the trial court granted a motion for summary judgment. Defendants respond that the standard should be abuse of discretion, notwithstanding the granting of a motion for summary judgment, because the sole basis for the summary-judgment motion was the doctrine of judicial estoppel.

¶ 17    As to the merits of the application of judicial estoppel, plaintiffs contend that the trial court erred, because defendants failed to establish by clear and convincing evidence all of the elements of judicial estoppel. Specifically, plaintiffs argue that the undisputed facts failed to show that they took inconsistent positions in the bankruptcy court and the trial court, that they made any false statements under oath or otherwise withheld information about their personal injury lawsuit with the intent to deceive the bankruptcy court, or that they benefitted from their failure to disclose their personal injury action in the bankruptcy proceeding. Additionally, they maintain that the grant of summary judgment was improper because defendants failed to rebut their affidavits and because the trial court failed to give any weight to their affidavits or recognize that their affidavits were unrebutted. Finally, plaintiffs contend that, even if we apply the abuse-of-discretion standard, the court abused its discretion, because it failed to properly address their evidence, did not apply all of the elements of judicial estoppel, and relied on case law that was both factually and legally distinguishable.

¶ 18                                   A. Standard of Review

¶ 19    The first issue we address is the proper standard of review. Our research reveals that the typical standard of review, when considering a trial court's decision to apply judicial estoppel, is abuse of discretion. See *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 9; *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996); see also *Runge*, 234 Ill. 2d at 132 (judicial estoppel is equitable doctrine invoked as a matter of discretion); *People v. Caballero*, 206 Ill. 2d 65, 80 (2002) (citing *Bidani*, 285 Ill. App. 3d at 550) (same). However, some courts have applied *de novo* review where the underlying motion, for summary judgment or under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), was "inseparable" from the decision to apply judicial estoppel. See *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶¶ 22-23 (citing *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 459 (2003)). Other courts have held that abuse of discretion remains the proper standard of review, regardless of the procedural manner in which judicial estoppel is raised. See *Berge*, 2011 IL App (1st) 103778, ¶ 9.

¶ 20    We begin by setting forth the two standards of review. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). A reviewing court's function is to determine whether a question of material fact exists and, if not, whether judgment as a matter of law was proper. *American Family Mutual Insurance Co. v. Page*, 366 Ill. App. 3d 1112, 1115 (2006). The review is *de novo*. *Perbix v. Verizon North, Inc.*, 396 Ill. App. 3d 652, 657 (2009).

¶ 21    The abuse-of-discretion standard, on the other hand, is the most deferential standard of review. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38. An abuse of discretion exists where the trial court's decision is arbitrary or fanciful, or where no reasonable person would agree with the court's position. *Control Solutions, LLC*, 2014 IL App (2d) 120251, ¶ 38.

¶ 22    In the context of this appeal, both standards apply. In applying the summary-judgment standard, we must decide first whether there were any issues of material fact related to the applicability of judicial estoppel. If there were, then summary judgment would be improper. If not, then we must decide whether defendants were entitled to judgment as a matter of law. To answer that latter question, we necessarily must decide whether the court abused its discretion

in applying judicial estoppel under the undisputed facts. If it did, then defendants would not be entitled to judgment as a matter of law. If it did not, then they would be.

¶ 23 Plaintiffs do not contend that summary judgment was improper because of any questions of material fact. Therefore, we need decide only whether the trial court abused its discretion in applying judicial estoppel based on the undisputed facts.

¶ 24                                    B. Judicial Estoppel

¶ 25 The doctrine of judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 59 (2009). The doctrine's purpose is to promote the truth and protect the integrity of the court system by prohibiting litigants from deliberately shifting positions to suit the exigencies of the moment. *Gambino*, 398 Ill. App. 3d at 59-60. The doctrine's five elements require that the party to be estopped: (1) took two positions; (2) that were factually inconsistent; (3) in separate judicial proceedings; (4) intending for the trier of fact to accept the truth of the facts alleged; and (5) succeeded in the first proceeding and received some benefit from the factual position taken therein. *Runge*, 234 Ill. 2d at 132. Judicial estoppel, like all estoppels, must be proved by clear and convincing evidence. *Smeilis*, 2012 IL App (1st) 103385, ¶ 20; *Boelkes v. Harlem Consolidated School District No. 122*, 363 Ill. App. 3d 551, 554 (2006) (citing *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 314 (2001) (requiring clear and unequivocal evidence of estoppel)).[1]

¶ 26 In this case, plaintiffs contend that defendants failed to establish three of the required elements of judicial estoppel: that they took factually inconsistent positions in the two proceedings, that they intended for the bankruptcy court to accept the truth of the facts alleged, and that they obtained a benefit in the bankruptcy proceeding. We will address each of those in turn.

¶ 27 As for inconsistent positions, plaintiffs' conduct satisfied that element. They failed to disclose, in the bankruptcy proceeding, the existence of their personal injury claims. On the other hand, relying on the existence of those claims, they prosecuted their personal injury action in the trial court. Thus, they clearly took factually inconsistent positions in the two proceedings regarding the existence of their personal injury claims.

¶ 28 We next address the question of whether plaintiffs intended that the bankruptcy court accept the fact that they did not have such claims.[2] We agree with plaintiffs that the documents submitted to the bankruptcy court did not require them to reveal their personal injury claims. Plaintiffs' failure to include such information on those forms thus did not evince that they

---

[1]We note that defendants do not contend otherwise.

[2]Plaintiffs argued in their opening brief that judicial estoppel requires that they submit a statement under oath. Our supreme court has not included that requirement in its identification of the elements of judicial estoppel. See *Runge*, 234 Ill. 2d at 132. In their reply brief, they contended that, even if defendants were required to establish only that they intended for the bankruptcy court to believe that they did not have any personal injury claims, defendants would still have to show that they did so via sworn testimony. Although sworn testimony could satisfy that element of judicial estoppel (see *Caballero*, 206 Ill. 2d at 80), it is not required.

intended to deceive the bankruptcy court regarding the existence of their personal injury claims. That does not mean, however, that defendants did not establish that element of judicial estoppel.

¶ 29    A chapter 13 bankruptcy estate encompasses all property, including legal claims, acquired after the petition is filed but before the case is closed. *Rainey v. United Parcel Service, Inc.*, No. 11-3106, 2012 WL 753680, at *2 (7th Cir. Mar. 9, 2012) (citing 11 U.S.C. §§ 541(a)(1), 1306(a)(1) (2006)); *In re Willett*, 544 F.3d 787, 791 n.3 (7th Cir. 2008)). Debtors have a continuing duty to disclose their assets during the pendency of the bankruptcy. *Becker v. Verizon North, Inc.*, No. 06-2956, 2007 WL 1224039, at *1 (7th Cir. Apr. 25, 2007) (citing *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)). Therefore, debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case remains open. *Rainey*, 2012 WL 753680, at *2. That is equally true of a legal claim arising after confirmation of a plan in a chapter 13 proceeding. *Woodard v. Taco Bueno Restaurants, Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693, at *10 (N.D. Tex. Dec. 8, 2006). A chapter 13 debtor has a continuing duty to be truthful and forthcoming about all of his assets so that the bankruptcy court, the trustee, and the allowed creditors can track any change in the debtor's ability to pay his debts. *Woodard*, 2006 WL 3542693, at *10. The creditors must be able to rely on the financial disclosures of the debtor throughout the bankruptcy, so that they can decide whether to object to, or seek modification of, the confirmed plan. *Woodard*, 2006 WL 3542693, at *10. That ability is impaired when disclosure by the debtor is incomplete, untruthful, or less than forthcoming. *Woodard*, 2006 WL 3542693, at *10.

¶ 30    In this case, plaintiffs never disclosed in the bankruptcy proceeding the existence of their personal injury claims, despite a clear duty to do so. Although plaintiffs contend that they were merely inadvertent in failing to do so, it was reasonable to infer that they understood the need to submit material financial information, as they had completed financial statements when they initiated the bankruptcy proceeding. Moreover, when it inured to their benefit, they promptly notified the bankruptcy court of their changed financial condition due to Terry's May 2009 work-related injury and loss of income and sought a lower payment schedule via a modification of the plan. Those facts show that plaintiffs knew that they had a continuing duty to disclose any changed financial conditions that might affect the plan. Yet, when Terry went back to work and was injured again, only a few months after receiving the plan modification, they never notified the bankruptcy trustee or the court. Plaintiffs cannot now claim that they were oblivious to their continuing duty to disclose all assets acquired during the pendency of the bankruptcy proceeding.

¶ 31    Plaintiffs rely on information that they allegedly received from the trustee, regarding disclosure of the receipt of any cash exceeding $2,000, to argue that they did not realize that they had to disclose any other assets. That information, however, was limited to the disclosure of cash and did not speak to the disclosure of any other assets. Nor did it otherwise indicate that it was meant to exclude the disclosure of other assets. As such, it was unreasonable for plaintiffs to have relied on that narrow instruction regarding disclosure of cash for the broader proposition that they had no continuing duty to otherwise disclose newly acquired assets such as a lawsuit. Absent some affirmative statement by the trustee that they did not need to disclose such an asset, their reliance on the information regarding any cash assets exceeding $2,000 did not justify their failure to disclose their personal injury claims.

- 6 -

¶ 32    Because plaintiffs had a clear duty to disclose their personal injury claims, their failure to do so evinced their intent that the bankruptcy court accept the fact that no such claims existed. Therefore, defendants established that element of judicial estoppel.

¶ 33    The next issue is whether defendants established the element that plaintiffs received some benefit in the bankruptcy proceeding from failing to disclose their personal injury claims. We conclude that defendants did.

¶ 34    As already discussed, one of the reasons that ongoing disclosure is required in a chapter 13 proceeding is so that creditors can object to, or seek modification of, a confirmed plan. *Woodard*, 2006 WL 3542693, at *10. In a very recent case, the Fourth District Appellate Court held that the plaintiff was judicially estopped from maintaining a personal injury suit that arose after confirmation of his chapter 13 plan. *Shoup v. Gore*, 2014 IL App (4th) 130911. In so holding, the court stated that the plaintiff benefitted from his nondisclosure "by having his repayment plan established and performed without giving his creditors any knowledge of his potential to recover damages in his personal-injury action." *Shoup*, 2014 IL App (4th) 130911, ¶ 17. Likewise, by failing to reveal the existence of their pending personal injury action, plaintiffs here avoided having the creditors potentially object to, or seek modification of, the plan. That alone was sufficient to satisfy the benefit-received requirement of judicial estoppel.

¶ 35    Plaintiffs also benefitted because they obtained a discharge of their debts without disclosing to their creditors the existence of their personal injury claims. The *Shoup* plaintiff's failure to disclose left him with the ability to permanently avoid his debts (via discharge) and yet receive a judgment against the defendant in the personal injury case. *Shoup*, 2014 IL App (4th) 130911, ¶ 17 (citing *Berge*, 2011 IL App (1st) 130778, ¶ 14). The court there ruled that that was sufficient to satisfy the benefit-received requirement of judicial estoppel. *Shoup*, 2014 IL App (4th) 130911, ¶ 17. Here, plaintiffs received the same benefit when they obtained a discharge of their debts while their undisclosed personal injury action remained pending. That economic advantage further satisfied the benefit-received element of judicial estoppel.

¶ 36    Plaintiffs rely on a recent decision from the Fifth District Appellate Court. See *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560. That decision, however, does not support plaintiffs. The plaintiff in that case failed to disclose in his chapter 13 bankruptcy a postconfirmation lawsuit. *Holland*, 2013 IL App (5th) 110560, ¶ 117. Although the appellate court concluded that judicial estoppel did not apply, it did so, in relevant part, because the bankruptcy court dismissed the case after the plaintiff failed to make payments under the plan. *Holland*, 2013 IL App (5th) 110560, ¶ 122. Therefore, the plaintiff, who did not receive a discharge of his debts, did not obtain a benefit for purposes of judicial estoppel. *Holland*, 2013 IL App (5th) 110560, ¶ 122. Because plaintiffs here received a discharge, *Holland* is distinguishable.

¶ 37    Alternatively, plaintiffs contend that the trial court abused its discretion because it "did not demonstrate any analysis of the elements of judicial estoppel or the evidence in this case." According to plaintiffs, the court made a "blanket finding" that, because they failed to disclose their personal injury action in the bankruptcy court, they were judicially estopped from maintaining that action.

¶ 38    The report of proceedings undercuts plaintiffs' contention. The trial court conducted a hearing at which plaintiffs were allowed to argue extensively as to why judicial estoppel did not apply. After hearing the arguments, the court stated that it was going to "review the cases that [the parties] cited, [and] the exhibits," and that it had "looked at it all, but [it] wanted to

look at it all again." The report of proceedings reflects that the court carefully considered plaintiffs' arguments, as well as the affidavits they submitted, in response to defendants' motion for summary judgment.

¶ 39  Additionally, in its written order, the trial court stated that it had reviewed the "[m]otion, briefs, affidavits, exhibits, relevant case law, and *** arguments." The court specifically referred to the affidavits of the trustee and the bankruptcy attorney. The written order reflects that the court thoroughly considered the affidavits presented by plaintiffs in their response to the summary-judgment motion.[3]

¶ 40  Further, the trial court, citing *Runge*, identified the five elements of judicial estoppel. It went on to analyze the evidence and reach its decision. It is presumed to know the law and to apply it properly (see *In re N.B.*, 191 Ill. 2d 338, 345 (2000)), unless the record demonstrates otherwise (see *People v. Jordan*, 218 Ill. 2d 255, 269 (2006)).

¶ 41  The dissent makes four primary points: (1) that plaintiffs never made any false statements under oath regarding the existence of their lawsuit; (2) that even if they were not required to make a false statement under oath, there was insufficient evidence to conclude that they intended to assert in the bankruptcy court that they had no pending lawsuit; (3) that *Holland* supports a different result; and (4) that an injustice results from the application of judicial estoppel in this case. We respectfully disagree with each point.

¶ 42  First, although some appellate courts have stated that the elements of judicial estoppel require a statement under oath (see, *e.g.*, *Parisi v. Jenkins*, 236 Ill. App. 3d 42, 53-54 (1992)), this court has consistently expressed that element as an intent for the court to accept the truth of the facts asserted in support of a position (see, *e.g.*, *McDonald's Corp. v. American Motorists Insurance Co.*, 321 Ill. App. 3d 972, 986-87 (2001); *People v. Lawlor*, 291 Ill. App. 3d 97, 103 (1997)). Moreover, our supreme court has not expressly required that the factual position be taken under oath. Instead, it has phrased the element more broadly to include any factual assertion that a party intends for the court to accept as true. See *Runge*, 234 Ill. 2d at 132. Of course, a false statement under oath would necessarily satisfy that element. By casting the element more broadly, however, the supreme court has recognized that there might well be situations in which a party could intend a court to accept the truth of its factual position even without a statement under oath. This case is a prime example of just such a situation.

¶ 43  Second, as we have explained, there is ample evidence in this case for the trial court to have found that plaintiffs intended to deceive the bankruptcy court by not disclosing the lawsuit. Although we will not reiterate that evidence, we emphasize the critical fact that plaintiffs promptly disclosed the existence of Terry's first workers' compensation case when it advantaged them but failed to disclose the second such case when it appeared likely that it would disadvantage them. That is a key piece of evidence that bears significantly on that element. The dissent's reliance on plaintiffs' motive for reporting the first workers' compensation case, their lowered income, does not detract from the significance of their failure to disclose the second workers' compensation case. Indeed, their reporting of the first case,

---

[3]Plaintiffs contend that summary judgment was improper because defendants never submitted any affidavits to rebut their affidavits. That argument lacks merit. Even with plaintiffs' affidavits taken as true, they did not show that summary judgment was improper. Thus, defendants were not required to submit any affidavits contrary to those relied upon by plaintiffs. See 735 ILCS 5/2-1005(c) (West 2012) (affidavits are not the only option by which a party may support its motion for summary judgment).

irrespective of their motive for doing so, demonstrates that they were aware of the need to report a change in their financial circumstances. The reasonable inference from that, when combined with their later failure to disclose the second case, is that they wanted to conceal from the bankruptcy court any possible improvement in their financial situation.

¶ 44 Third, the dissent's reliance on *Holland* is unpersuasive. To the extent that *Holland* states that a statement under oath is required, we respectfully disagree for the reasons already discussed. Moreover, in *Holland*, there was no evidence that the plaintiff intended to omit from his bankruptcy estate the fact that he had a pending lawsuit. See *Holland*, 2013 IL App (5th) 110560, ¶ 126. As noted, such evidence was present here, which clearly distinguishes *Holland* from our case.

¶ 45 Finally, we see no injustice in this case. In virtually all cases in which judicial estoppel is applied, the result will seem harsh to the party against whom the doctrine is invoked. However, as we have explained, the underlying purpose of judicial estoppel is to protect the integrity of the courts by disallowing parties from manipulating the judicial system to serve their own ends. As long as the doctrine is properly applied under the facts of a given case, such as it was here, that laudable purpose is served. Thus, in this case there is no injustice.

¶ 46 The record shows that the trial court's decision was thoughtful and well-reasoned. It was anything but arbitrary, fanciful, or unreasonable. There is nothing in the record to show that the court did not understand or properly apply the law in light of the evidence presented. Plaintiffs have not shown that no reasonable person would have applied judicial estoppel under the facts of this case. Thus, plaintiffs have not shown any abuse of discretion.

¶ 47 We emphasize that judicial estoppel's purpose is to prevent abuse of the judicial process and to preserve and protect the integrity of our system of justice. *Berge*, 2011 IL App (1st) 103778, ¶ 9. Plaintiffs here knowingly took inconsistent positions in the bankruptcy court and the trial court regarding the existence of their personal injury claims. They did so in a way that benefitted them in each of those courts. That is a classic situation to which the doctrine of judicial estoppel applies.

¶ 48                                    III. CONCLUSION

¶ 49 For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 50 Affirmed.

¶ 51 JUSTICE SCHOSTOK, dissenting.

¶ 52 Because the majority's decision results in an injustice, I respectfully dissent. It is abundantly clear that the trial court abused its discretion in applying the doctrine of judicial estoppel under the circumstances in the present case. Judicial estoppel is an equitable doctrine. *Runge*, 234 Ill. 2d at 132. The purpose of judicial estoppel is to prevent a litigant from playing "fast and loose" with the court (*Runge*, 234 Ill. 2d at 133) by intentionally taking contrary positions in order to obtain an unfair advantage (*Holland*, 2013 IL App (5th) 110560, ¶ 113). Judicial estoppel is meant to be "flexible and not reducible to a pat formula" and should be invoked only to prevent an injustice. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850-51 (1994).

¶ 53    Under these principles, the application of judicial estoppel in the present case is not appropriate. In reaching this determination, *Holland* is instructive. In *Holland*, the plaintiff, Holland, had filed a chapter 13 bankruptcy petition in August 2008 and the repayment plan was confirmed in November 2008. *Holland*, 2013 IL App (5th) 110560, ¶ 117. Six months later, in May 2009, Holland was terminated from his employment and a claim arose against the defendant-employer, Schwan's, for retaliatory discharge. *Id.* Holland never declared his claim against Schwan's as an asset of his bankruptcy estate and Schwan's argued that Holland should be estopped from asserting his claim. *Id.* ¶ 115.

¶ 54    The *Holland* court disagreed, stating that the application of judicial estoppel required the following: (1) a party must have taken two positions, (2) the party must have taken the two positions in judicial proceedings, (3) the positions must have been given under oath, (4) the party must have successfully maintained the first position and received some benefit thereby, and (5) the two positions must be totally inconsistent. *Id.* ¶ 113. The court determined that judicial estoppel did not apply, because Holland's failure to declare his claim against Schwan's as an asset of his bankruptcy estate did not constitute an inconsistent position under oath. *Id.* ¶ 118. The court noted that Holland had not filed any documents in the bankruptcy proceeding after May 2009 and thus had not filed any sworn documents that omitted the existence of the claim. *Id.*

¶ 55    The *Holland* court further noted the conflicting case law as to whether the "under oath" element of judicial estoppel was still a requirement for its application. *Id.* ¶ 119 (citing *Ceres Terminals*, 259 Ill. App. 3d at 854 (emphasizing that the doctrine of judicial estoppel is grounded in the sanctity of the oath), and *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 510 (1983) (relaxing the oath requirement but holding that the record must "clearly reflect that the party intended the trier to accept the truth of the party's position")). Nevertheless, the *Holland* court held that the absence of the oath requirement would not change its determination, because there was no evidence that Holland intended to omit his claim against Schwan's from the bankruptcy estate. *Id.* ¶ 120. Holland had testified that he notified his bankruptcy attorney of the claim against Schwan's and that his bankruptcy attorney prepared all his bankruptcy paperwork. *Id.* Because the alleged inconsistent position was not taken under oath or with the intent to deceive, the *Holland* court held that the trial court did not abuse its discretion in declining to apply the doctrine of judicial estoppel. *Id.* ¶ 123.

¶ 56    In the present case, as in *Holland*, after June 2010 (when this personal injury action arose) there was no paperwork filed in the plaintiffs' bankruptcy case that required, and omitted, the disclosure of the present suit. The record indicates that the only bankruptcy filings after that date were two change-of-address forms, which did not require the listing of additional assets. Accordingly, although the plaintiffs did not disclose this personal injury action to the bankruptcy court, there was no inconsistent position taken under oath.

¶ 57    Although the *Holland* court acknowledged the conflicting case law as to whether the "under oath" requirement is still an element of judicial estoppel, it is far more likely that the requirement applies here. *Id.* ¶ 119. In stating the necessary elements of judicial estoppel, the majority cites *Runge*, 234 Ill. 2d at 132, which did not set forth as a required element that the inconsistent positions must be given "under oath." However, the "under oath" requirement was not at issue in *Runge* and thus that court's recitation of the elements of judicial estoppel is not necessarily controlling. Moreover, *Runge* itself cites *People v. Caballero*, 206 Ill. 2d 65, 80 (2002), in support of its listing of the elements of judicial estoppel. *Runge*, 234 Ill. 2d at 132. In

*Caballero,* our supreme court stated that "[t]he doctrine of judicial estoppel rests not upon due process concerns, but 'upon public policy which upholds the sanctity of the oath and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings.' " *Caballero*, 206 Ill. 2d at 80 (quoting *Bidani*, 285 Ill. App. 3d at 549). Thus, our supreme court's comments support the "under oath" requirement.

¶ 58 Moreover, the most recent appellate court cases addressing the application of judicial estoppel based on a previous bankruptcy proceeding have specifically found that the previous inconsistent position must have been "under oath." See *Shoup*, 2014 IL App (4th) 130911, ¶ 10 (finding judicial estoppel applicable because the previous inconsistent position was taken under oath); *Holland*, 2013 IL App (5th) 110560, ¶ 113 (judicial estoppel did not apply, because there was no evidence of any inconsistent pleadings made under oath); *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 17 (judicial estoppel applied because plaintiff filed numerous submissions with the bankruptcy court under oath that listed other legal actions, but omitted the action at issue); *Dailey v. Smith*, 292 Ill. App. 3d 22, 28 (1997) (judicial estoppel applicable where, when requested to list contingent and unliquidated claims of every nature on a bankruptcy filing made under oath, the plaintiff failed to list the claim at issue).

¶ 59 Nonetheless, as in *Holland*, regardless of the oath requirement judicial estoppel should not have been applied here, because there was no evidence that the plaintiffs intended to omit this cause of action from the bankruptcy estate. Rather, the evidence in this case indicates that the failure to disclose was unintentional. In her affidavit, the bankruptcy trustee, Meyer, stated that the debtor was not required to disclose the acquisition of any property interest after confirmation of the bankruptcy plan unless the debtor was entitled to acquire, within 180 days after the filing of the petition, property by bequest, devise, inheritance, or other circumstances not relevant here. In his affidavit, the plaintiffs' bankruptcy attorney, Dahlberg, stated that the trustee informed the plaintiffs that they were to report any lump-sum refunds in excess of $2,000 received during the pendency of the bankruptcy proceeding. Although the majority states that this was limited to disclosure of cash and did not speak to the disclosure of any other assets, it could equally have been inferred by the plaintiffs that it was not necessary to disclose any unliquidated assets. Additionally, the fact that after this suit arose there were no bankruptcy pleadings filed under oath that would have required the listing of the present suit is another factor supporting a determination that there was no intent to deceive.

¶ 60 The majority finds an intent to deceive because the plaintiffs disclosed the existence of the first workers' compensation case, but failed to disclose this suit. However, the plaintiffs' purpose in returning to bankruptcy court was not "to disclose" the workers' compensation claim. Rather, the reason plaintiffs returned to bankruptcy court was to report a decrease in income, as a result of the workers' compensation claim. Their reduced income necessitated a request to decrease the amount of their payments under the plan. The fact that the plaintiffs disclosed the workers' compensation case does not show knowledge of the need to disclose the present suit, especially in light of the trustee's and attorney's affidavits and the fact that the plaintiffs never received income from the present suit while their bankruptcy case was open.

¶ 61 If anyone had a basis to object in this case, it would have been the bankruptcy trustee. However, the affidavits indicated that the trustee did not object and did not believe that disclosure of this suit would have changed the outcome of the bankruptcy proceeding since no funds were received during the five years when payments were required. Significantly, the

evidence indicates that the plaintiffs were not playing "fast and loose" with the court. Attached to the defendants' motion for summary judgment were letters from plaintiffs' counsel seeking to settle this cause of action prior to the discharge of the bankruptcy proceeding. If the plaintiffs were trying to avoid creditors, they would have waited until after the discharge in bankruptcy to attempt to settle this suit.

¶ 62    The majority finds that, because the plaintiffs had a duty to disclose this suit, the failure to do so evinced the intent to deceive the bankruptcy court. However, this reasoning diminishes the application of judicial estoppel to a rigid formula and fails to consider the specific circumstances of each case. Furthermore, the majority distinguishes *Holland* because, in that case, the plaintiff did not receive a discharge of his debts and thus could not be said to have benefited from his omission. However, that was not the primary reason for the reviewing court's holding. As the *Holland* court stated, the primary reason was that "Holland did not take two contrary positions under oath and the record [did] not establish that he intended to omit his claim *** from his bankruptcy estate." *Holland*, 2013 IL App (5th) 110560, ¶ 120. Although the *Holland* court noted that the benefit element of judicial estoppel had not been met, that was only as a secondary means to distinguish *Berge*. Notably, the *Holland* court's main reason for distinguishing *Berge* was that, unlike in *Berge*, there was no evidence that Holland had the intent to deceive. *Dailey*, *Berge*, and *Shoup* are distinguishable from the present case in that they all involved subsequent bankruptcy filings made under oath where disclosure was specifically required and the plaintiff failed to make the required disclosure. *Shoup*, 2014 IL App (4th) 130911, ¶ 10; *Berge*, 2011 IL App (1st) 103778, ¶ 17; *Dailey*, 292 Ill. App. 3d at 28.

¶ 63    In summary, application of judicial estoppel to bar the plaintiffs' suit is a harsh result that is not justified by a consideration of the facts. In this case, the defendants are seeking to avoid payment of damages and obtain a windfall after allegedly causing permanently disabling injuries to the plaintiffs. Judicial estoppel is a flexible doctrine (*Ceres Terminals*, 259 Ill. App. 3d at 850) and should not be imposed where it causes an injustice (*Bidani*, 285 Ill. App. 3d at 550 (a court should apply the doctrine of judicial estoppel "cautiously" and "only when not to do so would result in an injustice")). Under the circumstances in the present case, the application of judicial estoppel to bar the plaintiffs' suit is a grave injustice.